COVINGTON, Chief Judge.
This appeal by defendants questions the construction of a contract of sale with an assumption of mortgage between plaintiffs-appellees, the vendees, and defendants-appellants, the vendors. The trial judge held in appellees’ favor, awarding them damages in the amount of $132,-232.67 with interest and costs. Defendants appealed the judgment, and appellees answered the appeal, contending they were entitled to attorneys’ fees. We agree with the construction of the contract by the trial judge, but amend the judgment to delete a portion of the damages awarded.
FACTS
On August 9, 1976, defendants entered into a sale with mortgage with one Emmett L. Dunn, purchasing from him 328.74 acres of land in East Feliciana Parish for a sum of $328,740.00. The consideration was $6,000.00 cash and a promissory note in the amount of $322,740.00. The note, which was interest-free, was secured by a mortgage upon the property, and was payable as follows:
*954 $6,000.00 due and payable on or before August 10, 1977;
$8,000.00 due and payable on or before August 10, 1978, and on or before the 10th day of each August thereafter through August 10, 1995;
$172,740.00 due and payable on or before August 10, 1996.
Both the act of sale and the mortgage contained a clause providing for the release of portions of the mortgaged land upon payment of $1,000.00 per acre.
On April 4, 1983, the parties herein executed a sale with assumption of mortgage, in which plaintiffs purchased 139.73 acres of the original 328.74 acres from defendants. The stated consideration was $279,-460.00, of which plaintiffs paid in cash at the time of sale $146,680.00, leaving a balance due of $132,780.00. The crucial language in this document describing the treatment of this unpaid balance is as follows:
For the remainder of said price, namely the sum of ONE HUNDRED THIRTY-TWO THOUSAND SEVEN HUNDRED EIGHTY AND NO/100 ($132,780.00) DOLLARS, BUYERS assume and agree to hold the SELLERS free and harmless from the payment of ONE HUNDRED THIRTY-TWO THOUSAND SEVEN HUNDRED EIGHTY AND NO/100 ($132,780.00) DOLLARS of that certain promissory note made and executed by CECIL MERLIN GRAVES to the order of EMMETT LYLE DUNN, dated the 9th day of August, 1976 in the principal sum of THREE HUNDRED TWENTY-TWO THOUSAND SEVEN HUNDRED FORTY AND NO/100 ($322,740.00) DOLLARS, stipulating to bear interest at the rate of zero per cent per annum, which note was paraphed “Ne Varietur” by Richard H. Kilboume, Notary Public, for identification with an Act of Sale With Mortgage passed before him of even date therewith, which mortgage rests upon the property herein conveyed and recorded in the office of the Clerk and Recorder of East Feliciana Parish in the Conveyance Book C-4, folio 15-16. It is the intent of the parties that the Buyers shall assume a balance of ONE THOUSAND AND NO/100 ($1,000.00) DOLLARS per acre of the debt owed by SELLERS to Emmett Lyle Dunn. It is also understood that the BUYERS shall be responsible for their proportionate share of each yearly payment on the 10th day of August of each year before the final payment of ONE HUNDRED SEVENTY-TWO THOUSAND SEVEN HUNDRED FORTY AND NO/100 ($172,740.00) DOLLARS due and payable on the 10th day of August, 1996. The proportionate share of the BUYERS for each annual payment shall be their percentage of the following fraction: 132.78/328.74.
The annual August payment immediately following this sale in 1983 was made entirely by defendants, so that the total payments made by them at this time equalled $60,000.00. By March 9, 1984, defendants had also paid to Dunn some $129,010.00 in order to effectuate partial releases of portions of the mortgaged property, bringing the total amount of money paid to Dunn by defendants to $189,010.00.
When the due date for the next annual payment approached, that is, August 10, 1984, the secretary of plaintiffs’ attorney at that time, who apparently was acting also as plaintiffs’ agent in the matter of payment, telephoned defendant Cecil Graves with some questions about the upcoming payment to Mr. Dunn. At that time, she was informed by Graves that he no longer owed anything to Dunn. The secretary, Judy Myles, then relayed this information to plaintiff John Irwin Stewart, who nevertheless instructed her to make only a portion of the $8,000.00 payment due, $8,000.00 x 132.78/328.74, or $3,231.24, to Dunn. Despite a late tender of the balance of the $8,000.00 payment by plaintiffs, Dunn foreclosed on the property. Plaintiffs subsequently paid to Dunn the full amount due on the note, together with costs and attorneys’ fees. They then instituted this case against defendants.
ISSUES
I. Construction of the language in the sale with assumption of mortgage.
Defendants contend that they were relieved of any further liability on the note *955 to Dunn as of August 10, 1984, because their total payments to Dunn by that time equalled $189,010.00 on the debt of $328,-740.00, leaving a balance of $139,730.00. Since plaintiffs purchased exactly 139.73 acres, and agreed to assume a balance of $1,000 per acre of the debt owed by defendants to Dunn, defendants argue that the assumption effectively relieved them of any further obligation on the note to Dunn. They cite the following language in the act of sale as support: “It is the intent of the parties that the Buyers shall assume a balance of ONE THOUSAND AND NO/100 ($1,000.00) DOLLARS per acre of the debt owed by SELLERS to Emmett Lyle Dunn.” They state that this intent was further evidenced by the purchase agreement for the property, and that any other language was inserted in the act of sale by plaintiffs’ attorney at the time the sale was executed, Lonnie Myles, without instruction to that effect or discussion between the parties.
Plaintiffs, on the other hand, contend that the operative language in the act of sale with assumption is that portion stating “BUYERS assume and agree to hold the SELLERS free and harmless from the payment of ONE HUNDRED THIRTY-TWO THOUSAND SEVEN HUNDRED EIGHTY AND NO/100 ($132,780.00) DOLLARS of that certain promissory note....” They argue that this very specific language limits the amount of defendants’ debt to Dunn which plaintiffs assumed.
The purchase agreement was never formally introduced into evidence at trial, and therefore does not comprise a part of the record in this matter. Thus, our review of the documents involved is limited to those admitted in evidence. Defendants also argue that we may rely on the parol evidence offered of the parties’ intent because of the inherent conflict or ambiguity in the language of the act of sale regarding the stated consideration and the assumption of $1,000.00 per acre.
On first inspection the language relied upon by each side does appear to be inherently conflicting. Therefore, the testimony offered at trial was appropriate to aid the trial judge in determining the intent of the parties. See, Dixie Campers, Inc. v. Vesely Company, 398 So.2d 1087 (La.1981); Thomas v. Knight, 457 So.2d 1207 (La.App., 1st Cir.1984). After a careful examination of the record, we cannot say that the trial judge was manifestly erroneous in ruling for plaintiffs on the issue of the extent of their assumption of the mortgage.
The testimony of all the people involved in this transaction, from the attorney who prepared the documents to the parties themselves, indicates that there was never the degree of discussion prior to this sale that might have been expected, for a sale of property of this magnitude, particularly since highly experienced business people were involved. (Graves is involved in the operation of a car dealership; Kennedy and Stewart are both vice-presidents of a bank.) Both Kennedy and Stewart, as well as their attorney in the transaction, Lonnie Myles, indicated that there never was a discussion regarding the possibility that the Graves’ debt to Dunn would equal or be less than the debt which was assumed by the plaintiffs. Graves himself admitted that he had never informed the plaintiffs that he had paid Dunn all the money which he knew he owed, down to the $139,730.00, prior to the August 10, 1984, due date. Stewart testified that he knew nothing about other payments made by Graves to Dunn besides the annual payment in August 1983. It is not at all clear from the record that the plaintiffs were aware of the payments made by Graves to obtain partial releases of the mortgaged property; the release documents themselves contain no reference to money other than as identification with the original $322,740.00 note and mortgage.
Under these circumstances, we cannot say that the trial judge erred in holding that the language of limitation of $132,-780.00 on the assumption governed the transaction. It is even possible to construe the language of assumption of $1,000.00 per acre relied upon by defendants as being effective up to the limit of $132,780.00.
The trial judge’s resolution of this issue will stand.
*956 II. Damages
In holding for the plaintiffs, the trial judge awarded the following as damages:
Attorney’s fees due in the foreclosure to Dunn $13,649.88
Sheriffs costs in the foreclosure 5,068.25
Clerk’s costs in the foreclosure 1,104.06
Graves’s portion of the balance due to Dunn [1] 6,950.00
Interest on the money borrowed by plaintiffs to pay Dunn 90,460.48
Attorney’s fees and damages to plaintiffs 15,000.00
$132,232.67
We find all but one of these allowances for damages proper, although another item requires explanation. The trial judge found that the cause of the foreclosure proceeding filed by Dunn was the defendants’ failure to make their proportionate payment on the August 10, 1984, installment. As a consequence of the foreclosure proceeding, plaintiffs were required to borrow more than $150,000.00 at 11 percent interest in order to protect their interest in the mortgaged property. The plaintiffs’ expert economist testified that, while plaintiffs would have had to borrow money eventually to pay the balance of the final balloon note and thus pay interest on such loan, this loan resulted in interest payments at a much earlier date. His calculations thus were based on the “unnecessary” interest attributable to the foreclosure loan. This testimony was unrebut-ted, and the figure arrived at by Richardson was found to be reasonable by the trial judge. We cannot say that this was error.
However, the award of $15,000.00 in damages to plaintiffs must be deleted. While the judge acknowledged that there was no contractual basis for an award of attorney’s fees to plaintiffs, he stated in his reasons for judgment that “there have been some elements of damages because they [plaintiffs] have had to go through a foreclosure suit and this suit.” The record does not support a finding of damages. The plaintiffs admitted that there had been no detrimental effects on their business because of the foreclosure and this suit. There were no other adverse consequences proven which would support an award for these damages. The mere necessity of litigation is not a circumstance warranting damages. This award was an abuse of the much discretion of the trial judge.
CONCLUSION
For the reasons herein expressed, the judgment of the trial court is reduced to $117,232.67. In all other respects it is affirmed. Costs of this appeal are assessed against appellants.
AMENDED AND AFFIRMED.

. Because of an error involving approximately six acres of land which were not part of the original mortgage to Dunn, but which were nevertheless sold to Graves, there was a $6,950.00 discrepancy, uncontested by either side, in the figures supplied by Dunn’s attorney to Graves in the original sale. This discrepancy did not come to light, however, until after August 10, 1984, so that no bad faith was attributable to defendants on this point.
It should be noted that this figure, $6,950.00, is the precise difference between the $139,-730.00 figure urged by defendants as the amount assumed by plaintiffs, and the $132,-780.00 figured named in the act of sale with assumption as the amount assumed by the plaintiffs.